**UNITED STATES of America,**
**Plaintiff–Appellee,**
**Cross–Appellant,**

v.

**Bayron MORENO (89–1150/1208), Scott Krugielka (89–1171/1209),**
**Defendants–Appellants, Cross–Appellees.**

Nos. 89–1150/1171, 89–1208/1209.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 17, 1990.

Decided March 27, 1990.

sion of a firearm during the conspiracy; (3) the district court abused its discretion by finding that Krugielka did not play a minor role in the conspiracy; and (4) the testimony of government witness Jack Ventimiglia should not have been given any weight as a matter of law. The government in its cross-appeal challenges the sentences that the district court imposed, asserting that the district court should have taken a larger quantity of cocaine into consideration in calculating the base offense level, despite the fact that the jury returned a verdict finding the defendants guilty of conspiring to distribute a lesser amount. Finding the defendants' contentions on appeal to be without merit, we affirm the convictions. We remand for resentencing, finding that the district court erred in its calculation of the quantity of cocaine to be considered for sentencing purposes.

Kathleen Moro Nesi, Asst. U.S. Atty. (argued), Office of the U.S. Attorney, Detroit, Mich., and Janet L. Parker, Asst. U.S. Atty., Office of the U.S. Attorney, Bay City, Mich., for the U.S.

Robert J. Dunn, and C. Michael Gorte (argued), Bay City, Mich., for defendants-appellants.

Before KENNEDY and GUY, Circuit Judges; and LIVELY, Senior Circuit Judge.

RALPH B. GUY, Jr., *Circuit Judge.*

Defendants, Scott Krugielka and Bayron Moreno, appeal their convictions and sentences in this drug conspiracy case.[1] The United States cross-appeals the sentences that were imposed by the district court. In their appeal, the defendants raise the following allegations of error: (1) they were denied a fair trial because of prosecutorial misconduct; (2) the district court abused its discretion by adding two points to each defendant's base offense level for posses-

## I. STATEMENT OF FACTS

The defendants, along with seventeen others, were named in a sixty-three count indictment alleging a drug distribution conspiracy. Moreno, Krugielka, and co-defendants Brad Krugielka, Quinn Hickey, and Donald Ball were tried before a jury, and after a month-long trial, the jury returned a verdict convicting Scott Krugielka of one count of conspiracy to distribute or to possess with intent to distribute 500 or more grams of cocaine. 21 U.S.C. § 846. Moreno was convicted of one count of conspiracy to distribute or to possess with intent to distribute 500 or more grams of cocaine, 21 U.S.C. § 846, and of three counts of use of a federal communication facility to commit a felony. 21 U.S.C. § 843(b).

The district court sentenced Krugielka to 135 months imprisonment and Moreno to 235 months. Both defendants filed timely notices of appeal. The United States filed a cross-appeal.

We will address the issues presented *seriatim*, beginning with those allegations of error raised by the defendants.

---

1. The district court opinion is reported at 710 F.Supp. 1136 (E.D.Mich.1989).

## II. THE DEFENDANTS' APPEAL

### A. Allegations of Prosecutorial Misconduct

The defendants allege that the prosecutor made prejudicial and biased remarks in her closing argument and rebuttal that rose to the level of prosecutorial misconduct and that mandate a reversal. In order for such comments to warrant reversal, the comments must have " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). The comments about which the defendants complain were neither improper nor unfair.

■ Specifically, the defendants in this case assert that certain comments that the prosecutor made in closing about beepers were an expression of personal opinion and therefore improper:

> Now, I submit to you, what legitimate business purpose did the other people in this case have for a beeper number? You may have h[e]ard some testimony that Scott Krugielka had a job, but no testimony that he used it for his job, that he needed it for his job.

(Tr. Vol. IX at 19). At the end of the closing argument, defendant Krugielka moved for a mistrial based upon this comment. The district judge very properly denied the motion, ruling that the prosecutor had not shifted the burden or commented on defendant's failure to testify, but had merely "talked about what the evidence was." (Tr. Vol. IX at 38). The prosecutor was not stating her personal belief; she was simply arguing the evidence to the jury. Viewing these comments about beepers in the context of the prosecutor's entire closing argument supports the district judge's ruling that the prosecutor was merely discussing the evidence.

■ Krugielka also points to comments made by the prosecutor in rebuttal:

> Another thing Mr. Scorsone made reference to a red herring. I think he even said the beeper was a red herring.
>
> The red herring is not the beeper. The red herring is the argument that there are legitimate uses for beepers. There's no doubt about that.
>
> The red herring is that there are legitimate uses for plastic bags, for baking soda and for scales. Yes, that's true, ladies and gentlemen, and nobody is denying that.
>
> The red herring is saying when you put all these things together, along with the cocaine, it means anything but that those are innocuous.
>
> You put these things together, and they're consistent with cocaine trafficking. Those are the tools of the trade of cocaine trafficking.
>
> Sure, sometimes they can be used in other ways, but what does your reason and common sense tell you about how Mr. Hickey used those things?

(Tr. Vol. X at 113–14). No objection was made to this comment at trial. In addition, these remarks were addressed to defendant Hickey, not to Moreno or to Krugielka. Even assuming that the remarks were made in reference to the defendants who bring this appeal, we conclude that they were not improper. Viewed in their proper context, the prosecutor was not, as Krugielka suggests, attempting to argue that there were no legitimate uses for beepers. Indeed, she acknowledged such legitimate uses, but argued that all of the evidence and common sense pointed to the conclusion that the beepers were part of the tools of the trade of cocaine trafficking. She was not attempting to interject her personal opinion; she was merely discussing the evidence.

■ Defendant Moreno also claims error as a result of the prosecutor's characterization of witness Jack Ventimiglia. Defense counsel attacked Ventimiglia in closing argument and referred to him as the government's "star witness." In her rebuttal, the prosecutor said:

> He's not the government's star witness. He's a criminal. But he's a crimi-

nal whose crime is committed in association with other people. Remember that.

He said he wished he had never met the people at the prosecution table, and he never met these people till after April 12th. And what he testified about was the events before April 12th. That's when these gentlemen were his associates.

And in a very real sense, ladies and gentlemen, Jack Ventimiglia is not our witness, the government's witness, he's their witness. He's their associate.

He saw and was involved in what they did. . . .

(Tr. Vol. X at 144–45). At this point, counsel for codefendant Ball made an objection, and the following colloquy occurred:

MR. BURNS: Your Honor, I don't like to stand up, but I have to object to her categorizing Jack Ventimiglia as our witness. He was called by the government.

THE COURT: Did you refer to him as their witness?

MR. GORTE: She did, your Honor.

MS. PARKER: I said in a sense he's their witness.

THE COURT: No. In no sense is he their witness. They didn't call him. He was called by the government and cross examined, and that's a terribly inappropriate remark to call him their witness.

(Tr. Vol. X at 145).

In our view, we see no impropriety requiring reversal in the prosecutor's remarks. She was not telling the jury that Ventimiglia was technically a defense witness but, rather, that Ventimiglia was a long-time associate of the defendant and knows whereof he speaks. Although the judge admonished the prosecutor after a defense objection, it is clear from the transcript that the judge did not hear the remark made and only accepted an out-of-context explanation. The prosecutor wisely just returned to her argument rather than belaboring the point.

B. The Testimony of Jack Ventimiglia

■ Defendant Moreno also asserts in this appeal that the testimony of government witness Jack Ventimiglia should have been withheld from the jury as a matter of law. The defendant bases his claim on the fact that Ventimiglia was an admitted cocaine addict during the time of the conspiracy. According to the defendant, Ventimiglia's testimony is therefore unreliable and should not have been admitted. The defendant points out several inconsistencies in Ventimiglia's testimony, and he also relies on the fact that Ventimiglia admitted to suffering the symptoms of cocaine withdrawal after he agreed to testify for the government.

The defendant appears to be confusing two distinct issues. The weaknesses that Moreno points out in Ventimiglia's testimony go to its credibility, not to its admissibility. Credibility of testimony is a question for the jury, not for the court. Moreno appears to argue that Ventimiglia was not competent to testify at the trial because of his cocaine addiction. We recently addressed this issue in *United States v. Ramirez*, 871 F.2d 582 (6th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 127, 107 L.Ed.2d 88 (1989). In *Ramirez*, the defendant argued that the principal government witness was "incompetent" to testify because she used cocaine during the period about which she testified. The court explained that the question of competency was for the judge to decide, and that it was governed by Fed.R.Evid. 601, which provides, in relevant part, that "[e]very person is competent to be a witness except as otherwise provided in these rules." The court reasoned that the testimony of the witness in *Ramirez* was admissible on the following basis:

What must be remembered, and is often confused, is that "competency" is a matter of status not ability. Thus, the only two groups of persons specifically rendered incompetent as witnesses by the Federal Rules of Evidence are judges (Rule 605) and jurors (Rule 606). The authority of the court to control the admissibility of the testimony of persons so impaired in some manner that they cannot give meaningful testimony is to be found outside of Rule 601. . . . Again though, it is important to remember that

such decisions by a trial judge to either admit or exclude testimony will only be reversed for a clear abuse of discretion.

Under Rule 601, Espinal was clearly competent to testify. We find nothing in the record to suggest that she was otherwise impaired to the point that her testimony should have been excluded....

*Ramirez,* 871 F.2d at 584. Likewise, in the case now before this court, we conclude that the district court did not abuse its discretion by permitting Jack Ventimiglia to testify. Any inconsistencies in his testimony or any impairment in his perception or recollection properly are questions of his credibility, not of his competency as a witness.

### C. The Enhancement of the Defendants' Sentences Based Upon the Possession of Firearms

The district court enhanced the base offense levels of both defendants by two points for possession of a firearm during the conspiracy. On appeal, both defendants allege that this enhancement was improper.

■ On the day of the arrests, shortly after Krugielka had been taken out of the arresting agent's car, the agent found a small leather holster in plain view on the floor of the front passenger side of the vehicle. The car was constructed so that someone in the back seat could have dropped the holster and kicked it forward under the seat. Other than law enforcement officers, no one else had been in the car that day. Six days later, the officer found a gun in the same car while following up an informant's tip that Krugielka had left it there. No other non-law enforcement personnel had been in the car, and the gun fit the holster that previously had been found. The court ruled that this evidence was more prejudicial than probative and did not allow it to be put before the jury. However, the court ruled that the evidence was probative for sentencing purposes.

Section 2D1.1(b)(1) of the Federal Sentencing Guidelines provides that a defendant's base offense level should be raised two levels in the case of evidence of possession of a firearm during the commission of the offense.[2] We may not disturb the factual findings that underlie the district court's sentencing decisions unless such findings are clearly erroneous. *United States v. Perez,* 871 F.2d 45 (6th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989).

The district judge concluded that he was satisfied by a preponderance of the evidence that Krugielka was in possession of a firearm during the time of the conspiracy, therefore making the enhancement of his base offense level proper. Pursuant to the guidelines, possession of a firearm during the commission of the offense establishes a presumption that the possession is connected to the offense. The defendant can only overcome this presumption if he can show that "it is clearly improbable that the weapon was connected with the offense." Application Note 3 to Guidelines § 2D1.1(b)(1). Krugielka has offered no evidence to rebut this presumption, and we cannot say that the district court's conclusions were clearly erroneous.

■ In defendant Moreno's case, the district court applied the enhancement provision based upon evidence that Moreno possessed automatic weapons at his temporary residence during the time that the conspiracy was ongoing. This evidence was part of the presentence investigation report submitted to the court by the probation department. In addition to this report, witnesses testified that Moreno once fired shots near a co-conspirator's head to awaken him after a drug overdose. Although the defendant objected to the hearsay evidence contained in the report, he conceded at sentencing that he had no evidence to refute it.

Moreno cites cases in which courts of appeals have ruled that an enhancement for possession of a firearm was improper, but the cases that he cites are inapposite. For example, in *United States v. Missick,*

---

**2.** In *United States v. McGhee,* 882 F.2d 1095 (6th Cir.1989), this court recently rejected a due process challenge to this provision of the guidelines.

875 F.2d 1294 (7th Cir.1989), there was no evidence that the defendant was ever in possession of a firearm. Similarly, in *United States v. Vasquez*, 874 F.2d 250 (5th Cir.1989), the court held that upward adjustment was improper where the defendant was convicted of purchasing drugs from undercover agents, and the only gun was in the defendant's house, which was several miles away. There was absolutely no evidence to connect the gun to the transaction. Here, there is evidence that Moreno possessed weapons during the time of the conspiracy.

### D. The Refusal to Characterize Krugielka's Role in the Conspiracy as Minor

■ Defendant Krugielka contends that the district court erred by not classifying his role in the conspiracy as minor, which would have resulted in a reduced base offense level. Section 3B1.2 of the guidelines provides that the offense level of a defendant can be decreased by four levels if the court determines that the defendant's role in the criminal activity was minimal, and by two levels if the defendant's role was minor. The commentary to this section describes a minimal participant as one who is among the "least culpable of those involved in the conduct of a group." Application Note 1 to Guidelines § 3B1.2. A minor participant is described as one "who is less culpable than most other participants, but whose role could not be described as minimal." Application Note 3 to Guidelines § 3B1.2.

The district court did not make an upward adjustment in Krugielka's offense level on the grounds that he was a major player in the conspiracy. He merely declined the defendant's request to lower the offense level. Responding to the defendant's request to do so, the district court stated:

I wouldn't have any trouble going to the moon with him. If he was Moreno's driver, he knew everything Moreno knew. I mean, he knew about a lot when it gets right down to it. I find that from the evidence I heard at the trial.

It doesn't mean he was a leader, but—

. . . .

But he was Moreno's right-hand man as far as being handy. It doesn't put him in the leadership role. He was a driver, as far as the trial was concerned.

(Sentencing Tr. at 29). Based upon the evidence presented at trial, the district court's findings with respect to Krugielka's role in the conspiracy were not clearly erroneous.

### III. THE GOVERNMENT'S CROSS–APPEAL

Although the indictment alleged that the defendants conspired to distribute more than five kilograms of cocaine, the district court instructed the jury that it could return a verdict convicting the defendants of conspiring to distribute 500 or more grams of cocaine. The judge instructed the jury that it could return a verdict of conspiracy to distribute the greater or the lesser amount, and he termed the crime involving the lesser amount a "lesser included offense." The jury in fact did return a verdict finding the defendants guilty of a conspiracy involving the lesser amount. The statute on which the judge instructed the jury is 21 U.S.C. § 841(b), which sets forth different penalties depending upon the quantity of drugs involved. The substantive offense of distribution or of possession with intent to distribute is set forth in 21 U.S.C. § 841(a)(1) and (2):

**Unlawful acts**

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

In section 841(b), different penalties are mandated which vary depending upon the type and quantity of controlled substances involved:

**(b) Penalties**

Except as otherwise provided in section 845, 845a, or 845b of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

(1)(A) In the case of a violation of subsection (a) of this section involving—

. . . .

(ii) 5 kilograms or more of a mixture or substance containing a detectable amount of—

. . . .

(II) cocaine, its salts, optical and geometric isomers, and salts of isomers;

. . . .

such person shall be sentenced to a term of imprisonment which may be not less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall not be less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $4,000,000 if the defendant is an individual or $10,000,000 if the defendant is other than an individual, or both. . . .

(B) In the case of a violation of subsection (a) of this section involving—

. . . .

(ii) 500 grams or more of a mixture or substance containing a detectable amount of—

. . . .

(II) cocaine, its salts, optical and geometric isomers, and salts of isomers;

. . . .

such person shall be sentenced to a term of imprisonment which may be not less than 5 years and not more than 40 years and if death or serious bodily injury results from the use of such substance shall not be less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $2,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both. . . .

21 U.S.C. § 841(b).

The district court calculated the base offense level for the defendants for a conspiracy to distribute 500 or more grams of cocaine, despite the fact that the court found by a preponderance of the evidence that the conspiracy involved over five kilograms of cocaine. The district court reasoned that it was bound by the jury's verdict that stated a lesser quantity. The United States appeals the sentences that the district court imposed, arguing that the provisions of 21 U.S.C. § 841(b) are merely penalty provisions and not provisions that establish separate offenses.[3] Other circuits that have been faced with the task of interpreting section 841(b) have reached this conclusion, although no court has dealt with the specific issue presented here.

For example, in *United States v. Wood,* 834 F.2d 1382 (8th Cir.1987), the Eighth Circuit concluded that section 841(b) is a penalty provision and that it does not state distinct offenses. The court held that the enhanced sentencing provisions could be considered in sentencing in the *absence* of a specific jury finding as to quantity. Although the court was presented with arguments by the defendant that the amount of cocaine required to trigger the provisions of section 841(b)(1)(A)(iii) was neither properly charged in the indictment nor tried to the jury, the court affirmed the sentences without addressing either issue. The court ended its analysis with the conclusion that section 841(b) was nothing more than a sentence enhancement provision, which means that it was unnecessary for a jury to make a special determination as to quantity.

The leading case from the Third Circuit is likewise not instructive on the precise issue before this court. In *United States v. Gibbs,* 813 F.2d 596 (3d Cir.), *cert. denied,* 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d

---

**3.** The defendants argue that the government may not raise this issue on appeal because it failed to object to the court's instruction on the lesser included offense. However, the issue here is not jury instructions but what the court may properly consider at the time of sentencing, irrespective of what the jury finds.

45 (1987), the court held that section 841(b) was a penalty provision, and that the only requirement was that the indictment put the defendant on notice of the amount of drugs being charged and that the charge may give rise to an enhanced penalty. The amount of marijuana involved was only relevant to the sentence imposed, and did not constitute an element of the offense. However, the court in *Gibbs* did not reach the question of the relevance of specific jury findings as to quantity.

█ We agree with the Eighth and the Third Circuits that section 841(b) sets forth penalty provisions only and not separate "lesser included" offenses. As such, the sentencing judge, not the jury, has the prerogative to make a determination of the quantity of drugs involved in the scheme and to sentence accordingly. In *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), the Supreme Court upheld the constitutionality of Pennsylvania's Mandatory Minimum Sentencing Act, which provides that anyone convicted of certain enumerated felonies is subject to a mandatory minimum sentence if the sentencing judge determines, by a preponderance of the evidence, that the defendant "visibly possessed a firearm" during the commission of the offense. The petitioners argued that the possession of a firearm was an element of the offense that must be established beyond a reasonable doubt. The Court disagreed, holding that the Act was merely a sentencing consideration. As such, a determination by the judge that the evidence established possession of a firearm by a preponderance of the evidence would be sufficient to satisfy due process. Because section 841(b) is a penalty provision only, a determination of the quantity of cocaine by a preponderance of the evidence likewise satisfies due process in this case. The district court is not bound by the jury's verdict in this case despite the jury's finding as to the quantity of drugs involved in the conspiracy or scheme. The district court committed error both by treating 21 U.S.C. § 841(b) as a statute involving lesser included offenses and by considering itself bound at sentencing by the jury's findings.

The district judge also erred in his interpretation of the "Relevant Conduct" provision of the guidelines.[4] Since the judge viewed section 841(b) as setting forth separate offenses, he concluded that section 1B1.3(a) was not applicable to this case:

> The key words of limitation in the guideline are the words "offense of conviction." The offense of conviction was conspiracy to distribute 500 or more grams of cocaine. By statutory definition, this includes a range of cocaine between 500 grams and 5 kilograms. The lesser does not include the greater. Activity in connection with 5 or more kilograms could not logically occur during the lesser offense nor be in furtherance of it.

*United States v. Moreno*, 710 F.Supp. 1136, 1137 (E.D.Mich.1989). Because sec-

---

**4.** This section of the guidelines reads as follows:

The conduct that is relevant to determining the applicable guideline range includes that set forth below.

(a) *Chapters Two (Offense Conduct) and Three (Adjustments)*. Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that of-

fense, or that otherwise were in furtherance of that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3) all harm or risk of harm that resulted from the acts or omissions specified in subsections (a)(1) and (a)(2) above, if the harm or risk was caused intentionally, recklessly or by criminal negligence, and all harm or risk that was the object of such acts or omissions;

(4) the defendant's state of mind, intent, motive and purpose in committing the offense; and

(5) any other information specified in the applicable guideline.

Guidelines § 1B1.3(b).

tion 841(b) does not set forth distinct offenses, the judge's interpretation of the guidelines is flawed. The commentary to section 1B1.3 is quite instructive:

> A particular guideline ... may expressly direct that a particular factor be applied only if the defendant was convicted of a particular statute.... Unless such an express direction is included, conviction under the statute is not required. Thus, use of a statutory reference to describe a particular set of circumstances does not require a conviction under the referenced statute....
>
> ... Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range. The range of information that may be considered at sentencing is broader than the range of information upon which the applicable sentencing range is determined.
>
> ....
>
> Subsection (a)(2) provides for consideration of a broader range of conduct with respect to one class of offenses, primarily certain property, tax, fraud and drug offenses for which the guidelines depend substantially on quantity.... [I]n a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction....

Commentary to Guidelines § 1B1.3. This commentary indicates that the judge has the discretion to consider any and all evidence of the quantity of drug involved. The defendant need not be convicted of conspiring to distribute over five kilograms of cocaine for the judge to be able to make such a determination at sentencing. This court has held that conduct beyond the count of conviction may be considered at the sentencing level. *United States v. Sailes*, 872 F.2d 735 (6th Cir.1989), involved a conviction pursuant to a guilty plea. There was evidence that greater quantities of drugs were involved than were admitted by the defendant, and this court held that this evidence could be considered in calculating the sentence.

 The defendants argue that for the court to consider evidence of quantities of drugs in excess of five kilograms in light of the jury's findings would be tantamount to sentencing the defendants for conduct for which they had been acquitted. Because we hold that the quantity of cocaine is not an element of the offense of conspiracy to distribute cocaine, we need not address the question of whether a trial judge, at sentencing, can consider factors involved in counts on which a defendant has been acquitted.

The defendants' convictions are AFFIRMED and this matter is REMANDED for resentencing.