949 F.2d 397
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Barry David CASHIN, Defendant-Appellant.
 No. 91-1368.
 United States Court of Appeals, Sixth Circuit.
 Dec. 5, 1991.
 
 Before MILBURN and RALPH B. GUY, Circuit Judges; and ALLEN, Senior District Judge.*
 PER CURIAM.
 
 
 1
 The defendant appeals the sentence imposed after his guilty plea to conspiracy to distribute marijuana. He argues that the use of hearsay evidence at the sentencing hearing violated his Confrontation Clause rights and that the district court erred by overestimating the quantity of marijuana involved in the conspiracy. We reverse and remand for a resentencing hearing comporting with the requirements of the Confrontation Clause.
 
 I.
 
 2
 The defendant, Barry Cashin, pleaded guilty in December 1990 to one count of conspiracy to distribute marijuana. The indictment charged that the conspiracy between Cashin and two co-conspirators lasted from sometime in 1986 through April 6, 1990. Cashin's plea came after negotiations during which the government agreed to dismiss several other charges. Cashin and the government could not agree, however, on several factors affecting Cashin's sentence under the sentencing guidelines. The most significant of these disputed factors was the amount of marijuana distributed by the conspiracy. After accepting Cashin's plea, the district court ordered the preparation of a presentence report.
 
 
 3
 The presentence report concluded that the conspiracy involved approximately 1,820 kilograms of marijuana. The report stated that agents had seized approximately seven kilograms from Cashin's home during a raid, but that this seizure did not reflect the scale of the offense. The agents also found over $301,000 in cash in Cashin's home, including over $294,000 in stacked, rubber-banded currency in his basement safe. The report also concluded from Cashin's financial records that he had spent more than $101,000 above and beyond normal living expenses during the relevant period despite having no known legitimate income source. After adding the cash on hand to the excess expenditures, the report arrived at an estimate of over $400,000 in marijuana profits. The report next concluded that Cashin sold his marijuana in 25-pound lots. Citing an estimate by federal agents that the profit margin on sales of multi-pound lots of marijuana in the Midland, Michigan, area was approximately $100 per pound during the relevant period, the report estimated the total marijuana involved by dividing $400,000 by the $100 per pound profit margin. This division yielded a final estimate of 1,820 kilograms. Under Sentencing Guidelines § 2D.1.1. (c), 1,820 kilograms of marijuana translates to a base offense level of 32 (1,000 to 3,000 kilograms).
 
 
 4
 Cashin filed written objections to the report with the probation department. Cashin's objections included attacks on the figures and methods used to calculate the quantity of marijuana. The probation department did not change its report.
 
 
 5
 Both parties then filed sentencing memoranda with the district court. In its memorandum, the government essentially adopted the probation department's computations, but argued that Cashin's excess expenditures were $240,000, not $101,000. Using this figure, the government estimated the conspiracy involved 2,456 kilograms of marijuana. This quantity still translated to a base offense level of 32.
 
 
 6
 In his sentencing memorandum, Cashin presented several objections to the government's calculations. First, Cashin attacked the use of the profit margin rather than the price of the drug. Second, he argued that the $294,000 found in his safe was money he had before the start of the conspiracy. Third, Cashin claimed that his profit margin was considerably higher than $100 per pound. Fourth, he disputed the calculation of expenditures above "normal living expenses." Finally, he denied selling his marijuana in 25-pound lots. Cashin contended that he had sold, at most, 55 kilograms of marijuana.
 
 
 7
 The district court held a sentencing hearing in February 1991. At the beginning of the hearing, Cashin objected to the constitutionality of the procedures. Among other constitutional objections, Cashin argued that the use of hearsay evidence violated his right to confront witnesses. Cashin specifically argued that the admission of interviews conducted by the FBI violated his rights under the Confrontation Clause.
 
 
 8
 After overruling Cashin's constitutional objections, the district court turned to the issue of marijuana quantity. Counsel for the government first stated that federal agents estimated the profit margin on multi-pound sales to be $100 per pound. Government counsel also stated that FBI Agent Debrito had told her that the current purchase price for marijuana was $1,300 per pound. FBI Agent David Welker then testified that, of the 14.67 pounds of marijuana seized at Cashin's home, eight pounds were packaged in quantities of one pound each and another bag contained three pounds. The remaining marijuana was found in quantities ranging from one ounce to one-quarter ounce. On cross-examination, Welker stated that a dealer could buy marijuana for $800 to $1,100 per pound and sell it at $140 per ounce.
 
 
 9
 Cashin then called Dr. James Woodford, who was qualified as an expert in the testing and age dating of both marijuana and money. Dr. Woodford testified that the marijuana seized from Cashin's home was of poor quality. Dr. Woodford next testified that he could have tested the cash and estimated how long it had been in Cashin's safe. However, Dr. Woodford was unable to do so because the government had converted the cash into a cashier's check.
 
 
 10
 The government then produced DEA Agent William Dodson, who testified that the profit on quick turnover sales of one pound or larger lots of marijuana was approximately $100 per pound. Dodson acknowledged, however, that a seller could earn more by holding out for a higher price. On cross-examination, Dodson identified a drug transaction record from a notebook seized from Cashin, and the court admitted the record into evidence. The record indicated that Cashin sold quantities of less than a pound to some buyers.
 
 
 11
 No other witnesses testified at the hearing. However, the parties submitted numerous exhibits relating to the disputed calculations during and after the hearing. The probation department submitted a letter to the court indicating that another local drug dealer admitted making a profit of $100 to $200 per pound on multi-pound sales. Cashin objected to the use of the letter.
 
 
 12
 On March 1, 1991, the district court issued tentative findings of fact in a letter to the parties. The court accepted the government's figure of $240,000 in excess expenditures. Adding that amount to the money found in Cashin's house, the court concluded that Cashin had received over $540,000 in marijuana profits. The court then found that most of Cashin's sales had been in lots of one pound or more. Expressly accepting the $100 per pound profit figure provided by the government and the probation department, the court arrived at a total of 5,400 pounds, an amount within the 1,000 to 3,000 kilogram range of base offense level 32.[1]
 
 
 13
 After other enhancements were added, the total offense level came to 40. Combined with Cashin's criminal history category of III, the guideline range was 30 years to life imprisonment.
 
 
 14
 On March 5, 1991, the district court sentenced Cashin to 31 years imprisonment. Cashin then filed this appeal.
 
 II.
 
 15
 Cashin first argues that the sentencing hearing was unconstitutional. Specifically, Cashin contends that the government's use of exhibits and proffered proof in the sentencing hearing violated his rights under the Confrontation Clause of the Sixth Amendment.
 
 
 16
 Shortly after Cashin filed his appeal brief, this court decided United States v. Silverman, No. 90-3205, --- F.2d ---- (6th Cir. Sept. 17, 1991).[2] In Silverman, we held that the government must produce evidence comporting with the requirements of the Confrontation Clause to enhance a defendant's sentence if a material fact supporting the enhancement is disputed. Id., slip op. at 17.
 
 
 17
 The holding of Silverman clearly applies to the facts of this case. The government concedes that it used evidence not meeting the requirements of the Confrontation Clause. There also is no dispute that this evidence was used to prove disputed facts in order to enhance Cashin's sentence. We therefore reverse Cashin's sentence and remand for resentencing. If the government again seeks to prove disputed facts to enhance Cashin's sentence, the court must follow the procedure prescribed in Silverman:
 
 
 18
 In each such case the government can decide whether it will seek to enhance the sentence otherwise prescribed by the new code by proffering and attempting to prove such disputed facts. Upon receiving the government's proffer, district courts may decide whether the government's proffer of facts--if proved--would constitute grounds requiring an increased sentence. If the district court rejects the proffer as immaterial, it should sentence the defendant on the basis of the undisputed facts of the charged offense, the defendant's criminal history, and any other aggravating or mitigating factor provided for in the code. If the district court decides that the proffered evidence in dispute would constitute grounds for an increased sentence, it should then conduct an evidentiary hearing in accordance with the Confrontation Clause.
 
 Id., slip op. at 18.[3]
 III.
 
 19
 Cashin also attacks the methods the government and the district court used to estimate the quantity of marijuana involved in the conspiracy. Since we reverse and remand Cashin's sentence on the Confrontation Clause issue, we need not decide whether the district court properly determined the quantity of marijuana involved in the conspiracy. The reasonableness of any quantity estimate on remand will turn on the competent evidence produced by the parties. Therefore, we cannot say now what is a reasonable quantity estimate in this case.
 
 
 20
 We can, however, articulate a few general principles for the guidance of the district court. First, findings of fact used to enhance a defendant's offense level must generally be supported by a preponderance of the evidence. United States v. Walton, 908 F.2d 1289, 1301 (6th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 532 (1990). In Walton, we recognized that it is often difficult or impossible to determine the precise quantities involved in drug operations. Id. at 1301-02. We therefore required district courts in such cases to act cautiously in making estimates:
 
 
 21
 We believe that the guidelines do not permit the District Court to hold a defendant responsible for a specific quantity of drugs unless the court can conclude the defendant is more likely than not actually responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible.... Thus when choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution.
 
 
 22
 Id. at 1302 (emphasis in original).
 
 
 23
 Therefore, the district court on remand must err on the side of caution when faced with conflicting numbers or varying methods of computation. When a multi-step calculation is used to estimate quantity, small errors in the same direction at each step could produce a large error in the final result. Therefore, Walton requires that a district court use care to avoid cumulative error resulting from a series of assumptions favorable to the government.
 
 
 24
 Since the issue is likely to reappear on remand, we also briefly discuss methods of converting a defendant's money into a quantity of drugs. The sentencing guidelines provide:
 
 
 25
 Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.
 
 
 26
 U.S.S.G. § 2D1.4, comment. (n.2). Cashin stresses that this language approves the use of price, not profit margin, in making quantity estimates. Cashin also points out that there are no published cases approving the use of profit margin. He urges us to hold that a sentencing judge may not use the profit margin to calculate drug quantities.
 
 
 27
 We decline to issue a per se rule against the use of profit margins. Application Note 2 does not purport to list all of the factors a sentencing judge may consider to arrive at a quantity. Price is merely an example of the type of factors that a judge may use. While the parties do not cite to, and we have not found, any cases discussing the use of profit margins, that fact does not require us to hold that the use of profit margins is always error.
 
 
 28
 We stress, however, that a sentencing court must use caution when deciding to use a profit margin method to convert a defendant's assets into a quantity of drugs. The use of profit margins without detailed analysis of a defendant's financial situation could produce grossly misleading results.
 
 
 29
 We also decline Cashin's invitation to hold that the government must establish his net worth at the beginning of the conspiracy in order to include cash seized at his home in the drug quantity calculation. The government can prove that the money was involved in the conspiracy in a variety of ways. For example, the government could establish from other evidence that the quantity of money is consistent with the scale of the conspiracy. The government could also show that Cashin did not earn this money before the conspiracy.
 
 
 30
 The government also need not establish Cashin's opening net worth because money earned before the conspiracy could still have been involved in the conspiracy. For example, if a drug dealer had $200,000 at the start of a conspiracy and used that money to buy cocaine, a court could, using the price of cocaine, convert all of the money found in the dealer's home into cocaine quantities. It would, of course, be erroneous to use a profit margin method in such a case, unless the $200,000 were first subtracted out. On the other hand, if the $200,000 was not used in the drug operation but sat untouched in the dealer's closet, it could not be included in the quantity calculation.
 
 
 31
 Therefore, the government on remand need not establish Cashin's opening net worth in order to show that money seized in Cashin's home was involved in the drug conspiracy. The government will retain the burden, however, to show by a preponderance of the evidence that the money was related to the charged conspiracy. The district court may then, with the caution prescribed by Walton, convert the money shown to be related to the conspiracy into a quantity of marijuana.
 
 
 32
 We therefore REVERSE Cashin's sentence and REMAND to the district court for a resentencing consistent with this opinion.
 
 
 
 *
 The Honorable Charles M. Allen, United States District Court for the Western District of Kentucky, sitting by designation
 
 
 [1]
 The court noted that, even if half of Cashin's assets represented profits from small sales, the remaining half of his assets would still represent over 1,000 kilograms of multi-pound sales at a profit level of $100 per pound
 
 
 [2]
 A request for an en banc hearing has been filed in Silverman. In the event the court decides to hear this case en banc, the panel decision would be vacated. If that occurs, the district court, on remand, may elect to defer a resentencing until the confrontation issue is resolved. Since Silverman will be resolved long before even the shortest sentence the defendant might receive would run, we see no prejudice to the defendant if a delay were to occur. We note, however, that it may be more expeditious to simply go forward and have the government produce the witnesses at the hearing
 
 
 [3]
 Cashin also contends that the sentencing hearing was unconstitutional because a jury did not determine the amount of marijuana and because the government was not required to prove facts beyond a reasonable doubt. We find no merit to either of these arguments. See United States v. Moreno, 899 F.2d 465, 473-74 (6th Cir.1990)