991 F.2d 797
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Victor NANTZ, Defendant-Appellant.
 No. 92-5855.
 United States Court of Appeals, Sixth Circuit.
 April 14, 1993.
 
 Before GUY and BOGGS, Circuit Judges, and BELL, District Judge.*
 PER CURIAM:
 
 
 1
 Defendant Victor Nantz appeals his jury conviction for possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B), and his sentences for that offense and related offenses. Specifically, Nantz contends that there was insufficient evidence to support his jury conviction, that the district court abused its discretion by admitting evidence of prior drug-trafficking activity, that the district court erred in considering an unconsummated sale of fifty pounds of marijuana when calculating Nantz's base offense level, that the district court erred in enhancing Nantz's sentence for possession of a firearm in connection with a drug offense, and that the district court erred by not instructing the jury on its ability to disregard evidence judicially noticed. We affirm.
 
 
 2
 * On August 10, 1990, a surveillance team of Kentucky State Police Officers and Kentucky National Guardsmen discovered a cabin near some marijuana fields near Mozelle, Kentucky. The surveillance team returned to the cabin on August 12, 1990, where they arrested Victor Nantz, his brother Douglas Nantz, and a sixteen-year old juvenile. A .22 caliber rifle loaded with fourteen rounds was found inside Nantz's pickup. The officers seized 18.1 pounds of marijuana from the cabin.
 
 
 3
 Thomas McKnight, an undercover state police detective posing as a marijuana grower, met with Nantz three times in the fall of 1990 at a residence in the War Branch area of Leslie County, Kentucky. They first met on September 26, 1990. McKnight testified that on that day Nantz told him that the police had destroyed his marijuana fields and that he needed a new supply. They negotiated about the price and discussed the amount, but Nantz was displeased with the quality of the sample. On October 4, 1990, McKnight again met with Nantz in back of the house in War Branch. Nantz found the new sample more to his liking. McKnight and Nantz met a final time, on November 6, 1990, near the War Branch house. They discussed a sale of fifty pounds of marijuana and possible delivery points. The sale was never consummated because they never agreed on a delivery point.
 
 
 4
 On September 16, 1991, Kentucky State Police Officers, pursuant to a search warrant, searched the War Branch house. The officers found 14.1 pounds of marijuana, $60,812 in cash, a set of triple beam scales, and nine firearms, including a .223 semi-automatic rifle, fully loaded with a 20-round clip.
 
 
 5
 On January 29, 1992, Victor Nantz and Douglas Nantz were charged in a five-count indictment. Both brothers were named in three counts related to the marijuana found in the cabin in August 1990. These counts were: count one, conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. § 846; count two, possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B) and 18 U.S.C. § 2(a) & (b); and count three, using and carrying a firearm to commit a drug-trafficking crime, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2(a) & (b). Counts four and five were related to the marijuana and firearms seized in September 1991. In count four, Nantz was charged with possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B). In count five, Nantz was charged with using a firearm during and in relation to the drug-trafficking crime listed in count four, in violation of 18 U.S.C. § 924(c).
 
 
 6
 The district court ordered separate trials for counts one through three and counts four and five. On April 22, 1992, Victor Nantz and Douglas Nantz were found guilty of counts one and two and not guilty of count three. On April 23, 1992, Victor Nantz was found guilty of count four and not guilty of count five. On June 26, 1992, Nantz was sentenced for all convictions. The district court sentenced Nantz on counts one, two, and four to terms of forty-one months, to be served concurrently.
 
 
 7
 This timely appeal followed. On appeal, Nantz challenges his jury conviction in the second trial and his sentencing on all three counts.
 
 II
 
 8
 Nantz contends that his conviction on count four for possession of marijuana with intent to distribute should be dismissed because the government failed to prove that he possessed the marijuana. Specifically, Nantz contends that the government failed to prove its theory of constructive possession because it did not show that Nantz owned or controlled the War Branch residence in which the marijuana was found. The government must prove either actual possession or constructive possession. To prove constructive possession, the evidence must indicate " 'ownership, dominion, or control over the contraband itself or the premises ... in which the contraband is concealed.' " United States v. White, 932 F.2d 588 (6th Cir.1991) (emphasis added, quoting United States v. Gordon, 700 F.2d 215, 217 (5th Cir.1983)). In other words, the government must have presented sufficient evidence to support a finding that Nantz controlled the War Branch residence.
 
 
 9
 In attempting to show that there was insufficient evidence to support his jury conviction, Nantz faces a "very heavy" burden. United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.), cert. denied, 476 U.S. 1123 (1986). The question before this court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). "The government must be given the benefit of all inferences which can reasonably be drawn from the evidence ... even if the evidence is circumstantial." United States v. Adamo, 742 F.2d 927, 932 (6th Cir.), cert. denied, 469 U.S. 1193 (1984).
 
 
 10
 Detective John Sizemore, a longtime resident of Leslie County, testified that he was acquainted with Nantz and knew that Nantz lived in the War Branch residence. Detective McKnight testified that he met Nantz at the War Branch residence three times in the fall of 1990 to negotiate a marijuana sale. Finally, although no one was present at the residence when the search began, Nantz's son, who lived next door, appeared at the residence during the search. Based on this evidence, a reasonable jury could conclude that Nantz owned or controlled the premises on which the marijuana was found.
 
 III
 
 11
 Nantz contends that the trial court erred by admitting the evidence of Detective McKnight's three visits to the War Branch residence to negotiate the marijuana sale with Nantz. The district court allowed the evidence to be presented under Federal Rule of Evidence 404(b) as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 
 
 12
 It is well established that the district court has broad discretion in balancing the probative value against the potential prejudicial impact of evidence. United States v. Dabish, 708 F.2d 240, 243 (6th Cir.1983). We will overrule a district court's ruling under Rule 404(b) only if it constitutes an abuse of discretion. United States v. Feinman, 930 F.2d 495, 499 (6th Cir.1991).
 
 
 13
 The evidence of Nantz's negotiations with McKnight was properly admitted under Fed.R.Evid. 404(b). McKnight's testimony was introduced to show that Nantz had a customer base for resale, that Nantz lived at the house in War Branch, and that Nantz knew that marijuana was stored at the house. Although the negotiations took place almost a year before the search was conducted, this remoteness in time does not render the evidence nonprobative. See United States v. Ismail, 756 F.2d 1253, 1260 (6th Cir.1985).
 
 IV
 
 14
 Nantz contends that the district court committed clear error by including the fifty pounds of marijuana involved in the unconsummated negotiations when calculating the base offense level based on the quantity of drugs involved in the relevant conduct. Nantz argues that this amount should not be included because it was removed in time from the offense conduct and because the sale was never consummated. Both of these arguments must fail because of clear precedent in the Sixth Circuit.
 
 
 15
 Pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 1B1.3(a)(2) the base offense level "shall be determined on the basis of ... all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction...." The commentary to § 1B1.3 explains that, "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of a common scheme or plan as the count of conviction." U.S.S.G. § 1B1.3, comment. In United Sates v. Miller, 910 F.2d 1321, 1327 (6th Cir.1990), cert. denied, 111 S.Ct. 980 (1991), we clarified that "the entire quantity of [drugs] attributable to a distribution enterprise must be used to establish the base offense level...." In Miller, we interpreted the Sentencing Guidelines to "require[ ] consideration of uncharged relevant conduct...." Ibid. Therefore, there is no question that the district court may include uncharged drugs when calculating a defendant's base offense level. The only question is whether in this case the district court clearly erred by using the unconsummated sale to establish the base offense level. See ibid; see also United States v. Nichols, 979 F.2d 402, 413 (6th Cir.1992).
 
 
 16
 Nantz negotiated with McKnight the sale of fifty pounds of marijuana a little over a month after the officers arrested him for the conduct in counts one and two. McKnight testified that Nantz claimed he needed a new source of marijuana because the officers had destroyed his crop. Finally, marijuana and drug-related items were found in Nantz's residence nine months later. This is strong evidence that the unconsummated sale was part of the same scheme. Therefore, the district court's finding that the negotiations with McKnight constituted conduct relevant to the offenses of conviction is not clearly erroneous.
 
 
 17
 The fact that the negotiations were never consummated with an actual sale does not alter our conclusion. A comment to U.S.S.G. § 2D1.4, as it existed when Nantz was sentenced, explains:
 
 
 18
 If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.
 
 
 19
 U.S.S.G. § 2D1.4, comment. (n. 1). The district court found that the only reason that the sale was not consummated was that the parties could not agree on a delivery point. There is no evidence that Nantz did not have the money to purchase the marijuana and that he never intended to complete the deal. Accordingly, we hold that the district court did not commit clear error by considering the unconsummated sale when calculating the base offense level.
 
 V
 
 20
 Next, Nantz challenges the district's court enhancement of his base offense level by two levels because it found that he possessed a firearm during the commission of a drug-trafficking offense. U.S.S.G. § 2D1.1(b)(1) states that the offense level should be increased by two levels if "a dangerous weapon (including a firearm) was possessed...." We will not overturn the district court's finding that Nantz possessed a firearm during the commission of the offense unless it is clearly erroneous. United States v. Moreno, 899 F.2d 465, 470 (6th Cir.1990), cert. denied, 112 S.Ct. 1504 (1992). Furthermore, the district court's finding need be supported by only a preponderance of the evidence. Ibid. Therefore, the district court's finding may be proper even though the jury acquitted Nantz of the charge that he used a firearm during and in relation to a drug-trafficking crime. United States v. Duncan, 918 F.2d 647, 652 (6th Cir.1990), cert. denied, 111 S.Ct. 2055 (1991).
 
 
 21
 Enhancement is appropriate when the government shows constructive possession of the firearm. Constructive possession includes " 'ownership, dominion, or control' over the firearm or 'dominion over the premises' where the firearm was located." United States v. Blankenship, 954 F.2d 1224, 1227 (6th Cir.1992) (quoting United States v. Snyder, 913 F.2d 300, 304 (6th Cir.1990), cert. denied, 111 S.Ct. 709 (1991)). Moreover, "possession of a firearm during the commission of the offense establishes a presumption that the possession is connected to the offense." Moreno, 899 F.2d at 470. The district court specifically referred to the .223 semi-automatic weapon that was found in the War Branch residence. Because the firearm was found in Nantz's residence, close to the freezer full of marijuana and because the firearm is a type of weapon associated with drug trafficking, the district court's finding is not clearly erroneous. Moreover, Nantz presented no evidence to rebut the presumption that the .223 semi-automatic weapon was connected to the offense.
 
 VI
 
 22
 Finally, we reject Nantz's contention that the district court should have instructed the jury on judicial notice because we find that the district court did not take judicial notice of the identification of Nantz's house in the search warrant application, as alleged by Nantz.
 
 VII
 
 23
 For the foregoing reasons, we AFFIRM Nantz's jury conviction and sentences.
 
 
 
 *
 The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation