47 F.3d 1172
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carl WIRGAU, Nancy Vrooman, Defendants-Appellants.
 Nos. 94-1206, 94-1258.
 United States Court of Appeals, Sixth Circuit.
 Feb. 14, 1995.
 
 Before: ENGEL, KENNEDY and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants, Carl Wirgau and Nancy Vrooman, both pled guilty to conspiracy to possess and distribute drugs in violation of 21 U.S.C. Sec. 846. On appeal, they both challenge their sentences. Wirgau argues that the District Court improperly computed the drug quantities personally attributable to him, while Vrooman argues that the District Court erred in assigning her a two-point enhancement for being a leader or organizer. We affirm.
 
 I.
 
 2
 With the assistance of a confidential informant, the Michigan State Police investigated a drug conspiracy in Alpena, Michigan, involving, among others, Gary McDonald, Nancy Vrooman, and Carl Wirgau. McDonald was the apparent head of the conspiracy. Vrooman, McDonald's girlfriend, and Wirgau, a close friend of McDonald's, were both involved in some of the undercover and controlled buys made during the course of the investigation.
 
 
 3
 Between July 1992 and May 1993, Vrooman repeatedly sold drugs both to the confidential informant and to the undercover officer involved in the investigation. She also occasionally coordinated the flow of information between various co-conspirators and either the informant or the officer. On March 5, 1993, the officer went to Vrooman's house and sought to purchase a quantity of methamphetamine. Vrooman left the room, and, while the officer was waiting, a man identified as Todd Shafto entered the room. Vrooman returned holding a revolver and a towel behind her back. She demanded that the officer remove his clothes to prove he was not wearing a body wire. The officer asked Shafto about his role in the transaction, and Shafto responded that he was there to make sure the deal was completed in an acceptable manner. The officer refused to comply with Vrooman's demands and left without purchasing any drugs.
 
 
 4
 Wirgau's primary involvement in this case came in May 1993. On May 2, 1993, the confidential informant went to McDonald's motorcycle garage to discuss the possibility of purchasing one ounce of methamphetamine. McDonald indicated that he was going out of town and would not be able to deliver the drugs. At that point, McDonald involved Wirgau in the conversation and arranged for Wirgau to obtain and deliver the drugs.
 
 
 5
 During the conversation, the informant also raised the possibility of purchasing one half pound of methamphetamine. McDonald and Wirgau indicated that they would have no problems obtaining that quantity of the drug, but that the purchase price would be $10,000. The informant agreed to the price, and the men arranged the details of the transaction. Three days later, on May 5, the confidential informant made telephone contact with Wirgau. Wirgau reported that he had only two ounces of methamphetamine to sell. The informant told Wirgau that he only had enough money to purchase one ounce. The two men arranged to meet, but Wirgau never showed up, apparently due to car trouble.
 
 
 6
 On May 21, 1993, officers from the Presque Isle County Sheriff's Department arrested Wirgau pursuant to a federal warrant. At the time of his arrest, Wirgau had in his possession 1.231 grams of methamphetamine and 5.7 grams of marijuana.
 
 II.
 A. Wirgau
 
 7
 At sentencing, the District Court held Wirgau responsible for the one ounce and one half pound of methamphetamine discussed on May 2, for the "additional" one ounce of methamphetamine offered for sale on May 5,[1] and for the drugs he possessed at the time of his arrest. On appeal, Wirgau contends that the District Court erred in calculating the quantity of drugs for which he can be held responsible.
 
 
 8
 In support of his contention, Wirgau first argues that the District Court did not address the scope of the activity he agreed to undertake with respect to the conspiracy. In calculating the sentencing guideline range applicable to a particular defendant "in the case of jointly undertaken criminal activity," a district court is to consider "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. Sec. 1B1.3(a)(1)(B). Here, Wirgau was personally involved with all the drug quantities for which he was held responsible. Thus, there was no need for the sentencing court to make explicit findings as to whether Wirgau could "reasonably foresee" these acts.
 
 
 9
 Wirgau next argues that the District Court should not have found him responsible for the one half pound of methamphetamine discussed on May 2. According to Wirgau, he was not part of that discussion and had no knowledge of the one half pound. It is "the sentencing judge [who] had the prerogative to make a determination of the quantity of drugs involved in the scheme and to sentence accordingly." United States v. Moreno, 899 F.2d 465, 473 (6th Cir.1990). A district court's finding on quantity is governed by a preponderance of the evidence standard. Id.
 
 
 10
 In response to Wirgau's written objection to the presentence report (PSR), and in response to the same objection at the sentencing hearing, the probation officer responsible for preparing the PSR stated that Wirgau had admitted responsibility to her for the one half pound of methamphetamine. After reviewing the evidence, the District Court found that the discussion regarding the one half pound did occur and that Wirgau participated in the conversation.
 
 
 11
 Wirgau first attacks this finding by pointing out that the one half pound is an abnormally large quantity of methamphetamine compared to the other quantities he possessed. He also argues that the confidential informant was not reliable for a variety of reasons. Both of these argument were presented to the District Court, which weighed the arguments and concluded that the quantities found were supported by a preponderance of the evidence. We cannot say that conclusion is clearly erroneous.
 
 
 12
 Wirgau next attacks the District Court's findings by arguing that the sale of one half pound never took place. This argument is irrelevant. It is clear from the context of the conversation on May 2 that McDonald and Wirgau were willing and able to procure and sell this quantity of methamphetamine. That is all the law requires.
 
 B. Vrooman
 
 13
 The probation officer preparing Vrooman's PSR recommended that Vrooman be assessed a two point offense level enhancement based on her role as a leader or organizer in the conspiracy. In support of this recommendation, the probation officer pointed to Vrooman's role in negotiating various drug deals, her ability to arrange for others to deliver drugs on behalf of the conspiracy, and her use of Todd Shafto as an enforcer during the March 5 transaction. The District Court accepted the recommendation. Vrooman contends this decision was in error, as she did not possess the mental capacity to be a leader or organizer of the conspiracy.
 
 
 14
 The government contends that Vrooman should be barred from raising this issue now, as she did not raise it below. We need not decide this issue, as it is clear that the District Court's decision to assess the enhancement was not clearly erroneous. The Sentencing Guidelines provide that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity [involving less than five participants], increase [the offense level] by 2 levels." U.S.S.G. Sec. 3B1.1(c). The application notes following this provision state that
 
 
 15
 [t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.
 
 
 16
 U.S.S.G. Sec. 3B1.1, comment. (n. 2). The facts set forth in the PSR are sufficient to meet this standard. Vrooman's drug addiction and other mental impairments may have prevented her from playing an effective supervisory role, but they did not completely prevent her from operating in such a capacity.
 
 III.
 
 17
 For the foregoing reasons, we AFFIRM the District Court with respect to both sentences.
 
 
 
 [1]
 The record contains no discussion of why the one half pound transaction never occurred. The presentence report and the District Court's findings seem to imply that the May 5 transaction was supposed to be the culmination of the deal arranged on May 2. If this is true, then it seems that the Court may have double-counted when it assigned Wirgau responsibility for both the one half pound and the "additional" one ounce offered on May 5. Nevertheless, this extra one ounce did not affect the sentence calculation, and Wirgau has not raised this issue on appeal, so we will not address it further