UNITED STATES of America, Plaintiff–Appellee,

v.

Hector RAMIREZ, Defendant–Appellant.

No. 88–5447.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 16, 1989.

Decided April 4, 1989.

Louis DeFalaise, U.S. Atty., Jane E. Graham, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Lexington, Ky., for plaintiff-appellee.

James F. Perkins (argued), New Haven, Ky., for defendant-appellant.

Before GUY and NORRIS, Circuit Judges, and BELL, District Judge.*

RALPH B. GUY, Jr., Circuit Judge.

Defendant, Hector Ramirez, was convicted by a jury of possession of cocaine and

---

* Honorable Robert Holmes Bell, United States District Court, Western District of Michigan, sitting by designation.

conspiracy to possess cocaine with the intent to distribute.[1] The principal witness against Ramirez at trial was co-conspirator, Karla Espinal.[2] Espinal had also testified against other members of this conspiracy in two previous trials.

On the first day of Ramirez's trial, Roy Stout, a codefendant, filed a motion seeking to compel Karla Espinal to submit to a psychiatric examination to determine her competency as a witness in the case. That motion was based on the allegation that Espinal, in her testimony in the two previous trials, had admitted using substantial amounts of cocaine during the period covered by the offense, that is, May through August of 1987. Stout also sought permission to introduce psychiatric testimony relative to the effect of the drug Xanax, which had been prescribed by a physician for Espinal during the time she was in federal custody. Similar motions had been made and denied in the previous trials in which Espinal testified.

District Judge Siler heard the oral motion notwithstanding that it was made long after the motion cut-off date, and also allowed an offer of proof from the defense psychiatrist outside of the presence of the jury. Judge Siler denied the motions, and Ramirez now appeals claiming error in the denial.[3] Upon a review of the record, we conclude that the district judge did not abuse his discretion and affirm.

## I.

To address the issue raised on appeal, it is not necessary to state the facts other than briefly.[4] Ramirez and Espinal both had been involved with drugs for a number of years. Espinal had a very serious cocaine addiction and had also sold drugs. Both her present and former husbands were in prison for drug dealing and Ramirez was a cellmate of her ex-husband. Shortly after Ramirez was released from prison, but prior to the time charged in the indictment, he had provided Espinal with two kilos of cocaine for resale. In July of 1987, Ramirez called Espinal and offered to "front" at least five kilos of cocaine to her for resale. It was highly unusual to receive such an offer with no deposit being required. Espinal was suspicious of the offer because of these unusual circumstances and suspected that her ex-husband, who was then incarcerated, was either testing her or "setting her up." Espinal decided to contact local Lexington, Kentucky, police, but they did not pursue the matter. Espinal then travelled to Miami and met Ramirez, and they returned by air to Lexington under assumed names to await the auto delivery of the cocaine by courier. Espinal continued to worry since, even if the transaction was not a set-up, she really did not have the contacts to dispose of five kilos of cocaine in the short time that was provided. When the cocaine arrived, the situation became even more perilous since Espinal was given seven kilos of cocaine. After again attempting unsuccessfully to secure the help of the local police, she decided to resolve her dilemma by committing suicide. Fortified with cocaine and vodka and armed with a .38 caliber pistol, she went to the Kentucky Horse Park with the intention of killing herself. She was observed there by a security guard to whom she blurted out her story, and the guard helped in contacting federal authorities. The result was the arrest shortly thereafter of Ramirez and several others.

## II.

There is no claim by defendant that at the time of the trial Espinal was under the influence of cocaine. She had, in fact, been clean for the five months she had been in federal custody preceding the trial. Ramirez argues, however, that cocaine usage during the time period charged in the indictment rendered her an "incompetent" witness because her memory of those

---

1. 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1).

2. Espinal had previously entered a guilty plea under a plea agreement with the government.

3. Ramirez joined in Stout's motion without objection.

4. We must, on appeal, view the facts in the light most favorable to the government.

events could not be trusted as reliable. Ramirez was prepared to offer the opinion of a psychiatrist in support of his contention. Ramirez also argues that the taking of the anti-anxiety drug Xanax rendered Espinal incompetent.

Although Ramirez is imprecise in his terminology, the issue on appeal implicates the question of credibility as well as the question of competency. As was stated in *United States v. Brown*, 770 F.2d 768, 770 (9th Cir.), *cert. denied*, 474 U.S. 1036, 106 S.Ct. 603, 88 L.Ed.2d 581 (1985): "The credibility of a witness is a jury question but the competency of the witness to testify is for the judge to decide." Although the question of competency is for the judge to decide, in a federal criminal prosecution this decision must be made against the backdrop of Fed.R.Evid. 601 which provides:

> Every person is competent to be a witness except as otherwise provided in these rules. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law.

■ What must be remembered, and is often confused, is that "competency" is a matter of status not ability. Thus, the only two groups of persons specifically rendered incompetent as witnesses by the Federal Rules of Evidence are judges (Rule 605) and jurors (Rule 606).[5] The authority of the court to control the admissibility of the testimony of persons so impaired in some manner that they cannot give meaningful testimony is to be found outside of Rule 601. For example, the judge always has the authority under Rule 403 to balance the probative value of testimony against its prejudicial effect. Similarly, under Rule 603, the inability of a witness to take or comprehend an oath or affirmation will allow the judge to exclude that person's testimony. An argument can also be constructed that a person might be impaired to the point that he would not be able to satisfy the "personal knowledge" requirement of

Rule 602. Again though, it is important to remember that such decisions by a trial judge to either admit or exclude testimony will only be reversed for a clear abuse of discretion.

Under Rule 601, Espinal was clearly competent to testify. We find nothing in the record to suggest that she was otherwise impaired to the point that her testimony should have been excluded. She was not under the influence of cocaine, she recently testified credibly in two previous trials, and her testimony in this trial was very lucid. Although the defense psychiatric witness in her offer of proof indicated that Xanax might make a person placid to the point where cross-examination might be less effective, this was general testimony and highly speculative. Effective cross-examination is more closely related to highlighting factual inconsistencies than it is to the composure of the witness. In this case, Espinal's testimony was uniformly corroborated by physical evidence and other witnesses.

■ The only question remaining is whether the trial judge abused his discretion in not allowing a psychiatric examination of Espinal or testimony of a hypothetical nature by a psychiatrist on behalf of the defense. This would go to the issue of credibility. The large volume of narcotic prosecutions in federal courts has quite naturally resulted in a large number of narcotics users testifying as witnesses. This has resulted in the vogue defense strategy being a challenge to these witnesses because of their narcotics usage. Although the fact of such usage or addiction is certainly an appropriate subject of cross-examination, the courts have quite uniformly rejected the notion of injecting "experts" into the fray to opine on the effect of such drug usage.

■ The first problem, of course, is that the court cannot *order* a non-party witness to be examined by a psychiatrist. The most the court could do is condition such witness's testimony on a prior examination. However, as was stated in *United States v.*

---

5.  Fed.R.Evid. 501 makes the testimony of certain persons inadmissible as a result of a claim of privilege.

*Gutman,* 725 F.2d 417, 420 (7th Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 183 (1984):

> The courts that have addressed the question agree, however, that the power not to allow a witness to testify unless he submits to a psychiatric examination should be exercised sparingly. *See, e.g., United States v. Raineri,* 670 F.2d 702, 709 (7th Cir.1982); *United States v. Roach,* 590 F.2d 181, 185–86 and n. 9 (5th Cir.1979); *United States v. Heinlein,* 490 F.2d 725, 730–31 (D.C.Cir.1973).

If the doors are opened to a battle of experts testifying as to witnesses' credibility, there would be no end to the collateral consequences. There would be just as much reason to want such testimony as to an accomplice witness, an informer, or a witness who had cut a deal with the government as there would be to a drug user. In this era of increasing use of experts in both civil and criminal trials, the sad truth is that an "expert" can be found to testify on behalf of almost any viewpoint or position. Wisely, we have historically left credibility determinations to the trier of fact, and we see no reason to depart from that procedure under the facts of this case.

Finding no abuse of discretion on the part of Judge Siler, we AFFIRM.