43 F.3d 1473
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Steven Wayne McRAVEN, Charles David Walden, James Russell
Jones, Jr., and James Slate, Defendants-Appellants.
 Nos. 93-6554 to 93-6557, 93-6090 to 93-6093.
 United States Court of Appeals, Sixth Circuit.
 Dec. 5, 1994.
 
 Before: SUHRHEINRICH, SILER, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants Steven Wayne McRaven, Charles David Walden, James Russell Jones, Jr., and James Slate challenge their convictions for conspiracy to escape federal custody and attempted escape from federal custody. They have raised several issues, some pertaining to all defendants, and some to individual defendants, including: 1) use of leg restraints upon McRaven at trial; 2) denial of Jencks/Brady material; 3) sentencing enhancement for McRaven as a supervisor of the crime; 4) exclusion of evidence concerning the mental health records of a government witness; 5) sufficiency of the evidence against Slate; 6) speedy trial violations under the Constitution; and 7) denial of their motions for new trial.
 
 
 2
 For the reasons stated below, we affirm the decision of the district court.
 
 I.
 
 3
 In December, 1991, McRaven, Slate, Walden and Jones were being held on various charges in federal custody at cell block 5E of the Davidson County Criminal Justice Center. During that time, prison officials noticed that the lock on a door leading to a utility/boiler room in cell block 5E had been pried or sawed around. The prison guards searched the block and found various tools, including two hacksaw blades, which could be used to cut through the door and dismantle the wall leading to the outside. The guards had the door welded. Soon thereafter, guards noticed that someone had once again tampered with the boiler room door. Upon searching the cell block, the guards found more tools, a rope made out of bed sheets, and a dismantled mesh screen leading to the outside.
 
 
 4
 In May, 1992, the four defendants and Robert King, a co-conspirator, were indicted for conspiracy to escape and attempted escape. In February, 1993, the government obtained arrest warrants against the defendants. King plea bargained in exchange for his testimony at trial. In May, 1993, the remaining defendants went to trial. At trial, the government offered the testimony of three cell block 5E inmates: King; Steven Tracy, who testified in exchange for a reduction in his sentence for a drug charge; and Timothy Wayne White.
 
 
 5
 The jury found the four defendants guilty on both counts. Three of the defendants moved for a new trial or judgment of acquittal, which was denied.[1]
 
 II.
 
 6
 A. Leg Restraints.
 
 
 7
 Defendant McRaven argues that the district court erred when it required him to wear leg restraints during his trial. While the imposition of leg shackles is justified in only extraordinary situations, Kennedy v. Cardwell, 487 F.2d 101, 105 (6th Cir.1973), cert. denied, 416 U.S. 959 (1974), the decision to shackle a defendant during trial rests in the "sound discretion" of the trial judge. Id. at 107. This court reviews the district court's ruling for an abuse of discretion. Id.
 
 
 8
 As the district court noted in a well-reasoned opinion, the shackles were necessary in light of McRaven's history of violent crimes, his present charge of attempted escape, and the fact that prison guards found two concealed knives in his shoes just two months prior to this trial. Furthermore, the district court lessened the shackling's potentially prejudicial effect by having skirting added to both the defense and prosecution tables, requiring the Marshals to seat the defendants prior to the jury's entering the courtroom, and having the defendants remain seated until the jury exited. These precautions provided sufficient protection against any " 'inherently prejudicial' " exposure to the jury. United States v. Moreno, 933 F.2d 362, 368 (6th Cir.1991) ("exposure of the jury to a defendant in shackles requires a mistrial only when the exposure is ... 'inherently prejudicial' "). For these reasons, we find no abuse of discretion in the use of the shackles.
 
 
 9
 B. Jencks/Brady Material.
 
 
 10
 Defendant Walden challenges the district court's denial of his Jencks Act, 18 U.S.C. Sec. 3500(b), and Brady v. Maryland, 373 U.S. 83 (1963), requests for the written reports of four county officers that testified at trial. The government denied his requests since it was not in possession of, and did not use, the reports. While the district court refused to compel the government's production of the reports, it allowed Walden the opportunity to subpoena the reports, which he declined to do.
 
 
 11
 We will uphold a district court's denial of a Jencks Act or Brady demand unless clearly erroneous. United States v. Nathan, 816 F.2d 230, 237 (6th Cir.1987). The Jencks Act requires the government to produce any government witness's statement in the government's possession which relates to the subject matter at trial. 18 U.S.C. Sec. 3500(b). United States v. Clark, 928 F.2d 733, 738 (6th Cir.), cert. denied, 112 S.Ct. 144 (1991). A statement is considered to be in the government's possession when it is in the possession of a federal prosecutorial agency. United States v. Cagnina, 697 F.2d 915, 922 (11th Cir.), cert. denied, 464 U.S. 856 (1983); United States v. Trevino, 556 F.2d 1265, 1271 (5th Cir.1977).
 
 
 12
 Upon reviewing the record, we find that the district court's denial of the Jencks Act request was not clearly erroneous. The government consistently denied having possession of the reports. The reports were in the possession of the Davidson County Sheriff's Department, which is not a federal prosecutorial agency. Moreover, assuming that the government had possession of the reports, any resulting error is harmless, United States v. Taylor, 13 F.3d 986, 990 (6th Cir.1994), as Walden failed to subpoena these documents.
 
 
 13
 Likewise, Brady does not compel the production of these reports as Brady obligates the government to turn over only those documents in the government's possession that are favorable to the defendant and "material to guilt or punishment." United States v. Bencs, 28 F.3d 555, 560 (6th Cir.1994). To be "material," the documents must create a "reasonable probability that, had the evidence been disclosed, the result of the trial would have been different." Id. Hence, the documents must affect more than a defendant's "ability to prepare for trial." Id.
 
 
 14
 Once again, Walden offers no proof that the government had possession of the requested reports. Moreover, Walden failed to establish with reasonable probability that he would have been acquitted of the charges had he been given the reports. United States v. Grunewald, 987 F.2d 531, 535 (8th Cir.1993). Instead, Walden indicated that he would have used these reports for impeachment purposes only. For these reasons, we reject Walden's claim of error.
 
 
 15
 C. Exclusion of Evidence.
 
 
 16
 Defendants McRaven, Slate and Walden challenge the district court's exclusion of the testimony of William Hampton, an employee of the Davidson County Sheriff's Office, regarding King's inmate records, showing supposed mental instability. After hearing the testimony outside the presence of the jury, the district court ruled the evidence inadmissible under Federal Rules of Evidence 608 and 404. The district court, however, specifically allowed the defendants to cross-examine King about these incidents.
 
 
 17
 This court reviews a district court's decision to admit or exclude evidence for an abuse of discretion. United States v. Phibbs, 999 F.2d 1053, 1069 (6th Cir.1993); United States v. Ramirez, 871 F.2d 582, 584 (6th Cir.), cert. denied, 493 U.S. 841 (1989). As an initial matter, defendants argue that Hampton's testimony was necessary to impeach King's competency as a witness. This is a misstatement of the law. A witness's competency is an issue for the judge, not the jury, to decide. Ramirez, 871 F.2d at 584. Once the trial court has found the witness to be competent, a party may not attempt to impeach the witness on grounds of incompetency. Rather, any evidence of mental instability goes to the witness's credibility. Id.
 
 
 18
 It is clear from the record that defendants offered Hampton's testimony as character evidence to impeach King's credibility as a witness. Federal Rules of Evidence 607 and 608 set forth the permissible methods and uses of character evidence of a witness. Under these rules, the evidence must go to the witness's character for truthfulness. Furthermore, where an attorney seeks to impeach the witness's credibility with specific bad acts of the witness, the attorney must limit himself to cross-examination of that witness. No extrinsic evidence may be used. Fed.R.Evid. 608(b).
 
 
 19
 Rule 608 applies to the present situation. Defendants wanted Hampton to testify about King's specific bad acts (i.e., the alleged suicide attempt and the knife in King's possession). The only plausible reason for this evidence was to discredit King's testimony. Thus, the defendants attempted to use extrinsic evidence regarding specific bad acts of a witness in contravention of Rule 608(b). We affirm the district court's decision to exclude Hampton's testimony.
 
 
 20
 D. Sufficiency of Evidence.
 
 
 21
 Defendant Slate challenges the district court's denial of his motion for judgment of acquittal on the basis of sufficiency of the evidence. This court reviews a district court's denial of a motion for judgment of acquittal de novo. United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985), cert. denied, 474 U.S. 1069 (1986). However, the court does not review the evidence de novo. Rather, this court will "view the evidence in the light most favorable to the government," United States v. White, 985 F.2d 271, 274 (6th Cir.1993), and affirm the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 22
 Slate was charged with conspiracy to escape[2] and attempted escape. A co-conspirator is liable for the foreseeable substantive acts committed by another co-conspirator during and in furtherance of the conspiracy. Pinkerton v. United States, 328 U.S. 640, 646-47 (1946); United States v. Christian, 942 F.2d 363, 367 (6th Cir.1991). As long as the government proves beyond a reasonable doubt that Slate was a member of the conspiracy, Slate can be liable for the foreseeable acts of his fellow co-conspirators in attempting the escape. Christian, 942 F.2d at 367.
 
 
 23
 Upon review of the record, we find sufficient evidence to support Slate's conviction for conspiracy. King and White testified to Slate's tying bed sheets together to make a rope, and identified Slate as one of the prisoners involved in the escape. King also testified that Slate wanted to wait until the hole was big enough to allow all the prisoners involved to escape. Finally, King saw Slate enter and exit the boiler room. A rational jury could find beyond a reasonable doubt that Slate was a willing participant in the conspiracy.
 
 
 24
 Regarding Slate's argument that the testimony offered by King, Tracy and White represents unreliable hearsay, the district court properly admitted the statements after finding that the government offered sufficient proof of the conspiracy. Fed.R.Evid. 801(d)(2)(E). Furthermore, a witness's credibility and the weight to be given to the testimony is a matter solely for the jury's determination. White, 985 F.2d at 274; United States v. Schultz, 855 F.2d 1217, 1221 (6th Cir.1988). The district court properly denied Slate's motion for judgment of acquittal.
 
 
 25
 E. Speedy Trial.
 
 
 26
 Defendants McRaven, Slate, and Jones challenge the district court's denial of their motions to dismiss the indictment as violating their Fifth and Sixth Amendment speedy trial rights. We review the district court's denial de novo. See White, 985 F.2d at 275.
 
 
 27
 To prevail under a Fifth Amendment speedy trial claim, a defendant must prove that the delay "caused substantial prejudice ... [and] was an intentional device to gain a tactical advantage over the accused." United States v. Marion, 404 U.S. 307, 324 (1971) (emphasis added). It is not sufficient for defendants to claim that potential prejudice resulted from the delay. Id. at 326. The prejudice must be actual and substantial.
 
 
 28
 There is no evidence that defendants suffered actual and substantial prejudice as a result of the four-month pre-indictment delay. Likewise, none of the defendants alleges that the delay was intentional. Instead, the delay only appears to be normal investigative delay. Absent this proof, the defendants' Fifth Amendment claims are without merit. United States v. Lovasco, 431 U.S. 783, 795 (1977) (Fifth Amendment provides a limit only when delay is a result of prosecutorial tactics rather than investigation).
 
 
 29
 In regard to the Sixth Amendment speedy trial claim,[3] the Sixth Amendment's guarantee of a speedy trial arises only once the defendant becomes an "accused," by indictment, arrest, or information. United States v. Marion, 404 U.S. 307, 313 (1971); United States v. Alfarano, 706 F.2d 739, 741 (6th Cir.), cert. denied, 461 U.S. 931 (1983). Hence, contrary to defendants' understanding, the time prior to the indictment is irrelevant.
 
 
 30
 After reviewing the record in light of the four Barker v. Wingo factors,[4] 407 U.S. 514, 530 (1972), this court finds that defendants failed to demonstrate a Sixth Amendment speedy trial violation. First, while there was a one-year delay from the filing of the indictment and the trial, there was only a seventy-day period from the time of the arrests to the trial. Given that this circuit has found a six and one-half month delay to be permissible, United States v. White, 985 F.2d 271, 275 (6th Cir.1993) (citations omitted), seventy days is certainly not excessive, especially considering the circumstances of this case.
 
 
 31
 Second, the record supports the finding that the government did not delay for tactical reasons. None of the defendants argue that the delay was intentional on the part of the government. Instead, they argue that the delay was due to the government's negligence. However, the record does not support this claim.
 
 
 32
 Next, while the third element favors defendants as they made timely assertions of their right to a speedy trial, they failed to satisfy the "substantial prejudice" element that this circuit requires. See id. All of the defendants were already serving time in prison for various federal convictions, so oppressive incarceration prior to the trial is not a concern. Likewise, as they were already in prison, there is no concern that the defendants were "anxious" that the indictment might hurt their standing in the community. Furthermore, defendants' claims that they were unable to prepare an adequate defense are without merit. Jones's failure to communicate with his uncle is due to his own delay, not the government's. Both McRaven's and Slate's argument that the delay cost them the potentially favorable testimony of witnesses is too speculative to satisfy the substantial prejudice requirement. Finally, McRaven's argument that the delay resulted in a lengthening of his sentence loses its force, considering both this circuit's holding in White that delay that prevents a defendant from serving concurrent state/federal sentences does not give rise to substantial prejudice, id. at 276, and the fact that the trial court knew that it could impose concurrent sentences.
 
 
 33
 For these reasons, we affirm the trial court's denial of defendants' motions to dismiss the indictment.
 
 
 34
 F. Motion for New Trial.
 
 
 35
 Next, Defendants McRaven, Slate and Jones argue that the district court erred in denying their motions for new trial based upon newly discovered evidence pertaining to Tracy's lying to the government about a death threat. Defendants argue that the jury would have acquitted the defendants had they known of this incident prior to deliberating since this incident. We review the district court's denial of defendants' motions for a new trial for an abuse of discretion. Turner, 995 F.2d at 1364.
 
 
 36
 The district court held that, while the defendants satisfied the first and second requirements for a new trial based upon newly discovered evidence, the evidence is only impeaching and, thus, its use is unlikely to produce an acquittal. United States v. Turner, 995 F.2d 1357, 1364 (6th Cir.1993); United States v. O'Dell, 805 F.2d 637, 641 (6th Cir.1986), cert. denied, 484 U.S. 859 (1987). We adopt the district court's analysis of this issue and affirm its denial of defendants' motions for new trial.
 
 
 37
 Defendant McRaven argues that his situation is unique as only King's testimony would remain if a jury rejected Tracy's testimony. However, "uncorroborated testimony of an accomplice may support a conviction." United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985), cert. denied, 474 U.S. 1069 (1986); United States v. McCallie, 554 F.2d 770 (6th Cir.1977). Furthermore, a witness's credibility is not a proper subject for an appellate court to consider. It is a matter solely for the jury. United States v. Schultz, 855 F.2d 1217, 1221 (6th Cir.1988).
 
 
 38
 G. McRaven's Sentence.
 
 
 39
 Finally, Defendant McRaven argues that the evidence was insufficient to support a three-level upward adjustment in his sentence for acting as a manager or supervisor of the planned escape, pursuant to USSG Sec. 3B1.1(b). In reviewing a district court's application of the Sentencing Guidelines to the facts of a particular case, a court of appeals must give "due regard to the opportunity of the district court to judge the credibility of the witnesses." 18 U.S.C. Sec. 3742(e). The appellate court should accept the district court's findings of facts unless they are clearly erroneous. Id. However, a preponderance of the evidence must support the sentencing court's findings of fact. United States v. Okayfor, 996 F.2d 116, 122 (6th Cir.1993); United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991).
 
 
 40
 A court may increase a defendant's sentence by three levels if it finds that the defendant was a manager or supervisor of the criminal activity and the activity involved five or more participants or was otherwise extensive in nature. USSG Sec. 3B1.1(b). In determining McRaven's sentence, the district court specifically found the following: a total of five individuals participated in the crime (i.e., witness King plus the four defendants); McRaven supplied the hacksaws; McRaven furnished the toenail clippers used to cut the mesh wire screen that led to the outside; and McRaven participated in the earliest stages of the escape plans. A preponderance of the evidence supports the district court's decision to impose an upward adjustment to McRaven's sentence.
 
 
 41
 AFFIRMED.
 
 
 
 [1]
 Walden received 36 months incarceration and two years supervised release. Jones received 48 months incarceration and three years supervised release. Slate received 30 months incarceration and two years supervised release and McRaven received 33 months of incarceration and three years supervised release
 
 
 [2]
 For a conspiracy charge, the government must establish beyond a reasonable doubt that: 1) a conspiracy was willfully formed; 2) the accused willfully joined the conspiracy; 3) at least one member of the conspiracy committed an overt act toward the conspiracy; and 4) the overt act was done knowingly in furtherance of some object or purpose of the conspiracy. United States v. Carr, 5 F.3d 986, 990 (6th Cir.1993). In addition, in order to establish conspiracy to escape from federal custody, the government must prove: 1) escape was the conspiracy's goal; 2) defendant was confined at the direction of the United States Attorney General; and 3) the defendant was held on a felony charge in federal custody. United States v. Vanover, 888 F.2d 1117 (6th Cir.1989), cert. denied, 495 U.S. 934 (1990)
 
 
 [3]
 Defendants Slate and McRaven also argue that the government violated Rule 48(b) of the Federal Rules of Criminal Procedure. Since the same Sixth Amendment analysis applies to Rule 48(b) claims, the court need not consider this claim separately
 
 
 [4]
 The four factors are: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right to a speedy trial; and 4) prejudice to the defendant
 As to the factor of prejudice, this court considers: the length of the pretrial incarceration; the anxiety suffered by the accused while awaiting trial; and, the impairment of the accused's defense. United States v. White, 985 F.2d 271, 275 (6th Cir.1993).