62 F.3d 1415
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Max Orvel PLUMLEE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Patrick Kit PLUMLEE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ramona Maria DIFAZIO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Theresa CREPEAU, a/k/a T Crepeau, Defendant-Appellant.
 Nos. 94-5573, 94-5574, 94-5575, 94-5576.
 United States Court of Appeals, Fourth Circuit.
 Argued May 5, 1995.
Decided Aug. 10, 1995.
 
 ARGUED: Andrew Robert Sebok, Norfolk, VA, for appellant Max Plumlee; Sydney K.L. West, Horne, West & McMurtrie, Gloucester, VA, for Appellant Crepeau; Terry Noland Grinnalds, Hampton, VA, for appellant DiFazio; Stephen Ashton Hudgins, Smith & Hudgins, Newport News, VA, for appellant Patrick Plumlee. Kevin Michael Comstock, Assistant United States Attorney, Norfolk, VA, for appellee. ON BRIEF: Helen F. Fahey, United States Attorney, Norfolk, VA, for appellee.
 Before WILKINSON and HAMILTON, Circuit Judges, and HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 In this consolidated appeal, appellants, Max Orvel Plumlee (Max), Patrick Plumlee (Patrick), Ramona Maria DiFazio (DiFazio), and Theresa Crepeau (Crepeau) appeal the judgment entered by the district court in their respective cases. Finding no error, we affirm.
 
 
 2
 * This case involved a conspiracy to possess with intent to distribute and to distribute cocaine and cocaine base (crack) from 1986 until January 1994. Originally, the conspiracy was headed by Fred Tadeschi and Promprieng Elledge, but sometime in 1991, Max and Patrick inherited the leadership roles. Generally, Max and Patrick travelled to New York to obtain cocaine and returned to Virginia, where they divided the cocaine and distributed it to their respective dealers. Crepeau, Max's girlfriend, assisted Max in the distribution of his share of the cocaine. Similarly, DiFazio assisted Patrick in the distribution of his share of the cocaine. Sometime in 1991, Patrick and DiFazio began to convert some of the cocaine into crack. There is evidence in the record that the appellants shared the profits of their cocaine and crack distribution activities, and that Max's distributors were aware that Patrick and DiFazio sold crack.
 
 
 3
 In January 1994, a grand jury in the Eastern District of Virginia returned a thirty-count indictment against eight individuals, including appellants, charging various violations of federal statutes, including conspiracy to possess with intent to distribute and to distribute cocaine and crack in violation of 21 U.S.C. # 8E8E # 841 and 846. Additionally, the appellants were charged with numerous other drug and firearm offenses. Max and Patrick were also charged with engaging in a continuing criminal enterprise (CCE), see 21 U.S.C. Sec. 848.
 
 
 4
 The jury convicted Max of twenty-five counts, including the conspiracy and CCE counts. Patrick was convicted of twenty-two counts, including the conspiracy and CCE counts. DiFazio was convicted on eight counts, including the conspiracy count. Crepeau was convicted of seven counts, including the conspiracy count. The district court sentenced Max to life plus 300 months and Patrick to life plus 60 months. DiFazio was sentenced to 900 months' imprisonment and Crepeau was sentenced to 420 months' imprisonment.
 
 
 5
 The appellants noted a timely appeal.
 
 II
 
 6
 On appeal, the appellants raise numerous assignments of error, only a few of which merit discussion. We shall address each of these arguments in turn.
 
 
 7
 * In an effort to impeach the testimony of cooperating witnesses who freely admitted they used drugs, the appellants sought to admit expert testimony from certain "drug addiction experts." These experts would have testified as to the effect that drug use would have on a witness' "ability to accurately recall events." Appellants' Brief at 17. The district court refused to accept this expert testimony under Rule 702, and the appellants now claim this ruling constitutes reversible error. We disagree.
 
 
 8
 Rule 702 states that an expert may only testify about "scientific, technical, or other specialized knowledge" that "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. In Daubert v. Merrell Dow Pharmaceuticals, Inc., 113 S.Ct. 2786 (1993), the Court "set forth a two-part test which must be met in order for such expert testimony to be properly admitted under the FRE: (1) the expert testimony must consist of 'scientific knowledge'--that is, the testimony must be supported by appropriate validation; and (2) the evidence or testimony must 'assist the trier of fact to understand the evidence or to determine a fact in issue.' " United States v. Dorsey, 45 F.3d 809, 813 (4th Cir.1995) (quoting Daubert, 113 S.Ct. at 2795).
 
 
 9
 We pass the question whether the proffered expert testimony satisfied Daubert 's first prong. An answer to this question need not be ventured here because the proffered expert testimony unquestionably did not satisfy Daubert 's second prong. To satisfy Daubert 's second prong, the proffered evidence must fall outside the common knowledge of jurors. Dorsey, 45 F.3d at 814-15. Here, assessing the impact of drug use on a witness' credibility is "something that can sufficiently be done by the jury without help from an expert." Id. at 815. Indeed, "courts have quite uniformly rejected the notion of injecting 'experts' into the fray to opine on the effect of such drug usage." United States v. Ramirez, 871 F.2d 582, 584 (6th Cir.), cert. denied, 493 U.S. 841 (1989). The reasoning behind this rule is clear:
 
 
 10
 If the doors are opened to a battle of experts testifying as to witnesses' credibility, there would be no end to the collateral consequences. There would be just as much reason to want such testimony as to an accomplice witness, an informer, or a witness who had cut a deal with the government as there would be to a drug user.... [T]he sad truth is that an "expert" can be found to testify on behalf of almost any viewpoint or position. Wisely, we have historically left credibility determinations to the trier of fact, and we see no reason to depart from that procedure under the facts of this case.
 
 
 11
 Id. at 585. In sum, we cannot conclude the district court abused its discretion in refusing to admit this testimony.
 
 B
 
 12
 Appellants also contend that a fatal variance existed between the indictment, which alleged a single conspiracy, and the proof at trial, which they claim established multiple conspiracies as a matter of law. Basically, this argument rests on the assertion that Max and Crepeau did not conspire to distribute crack.
 
 
 13
 To prove a single conspiracy, it was incumbent upon the government to demonstrate an agreement to undertake the possession with the intent to distribute and the distribution of cocaine and crack, and also show each appellant's willful joinder in that agreement. See United States v. Clark, 928 F.2d 639, 641-42 (4th Cir.1991). Each appellant's participation in, and knowledge of the goals of, a conspiracy may be established by direct, as well as circumstantial, evidence. See United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991). A conspirator who joins the plan to conspire on one occasion is bound by the reasonably foreseeable acts of other coconspirators in furtherance of the conspiracy, and may be convicted accordingly, even if he does not participate in all the acts of the conspiracy. See United States v. Bell, 954 F.2d 232, 236 (4th Cir.1992), cert. denied, 114 S.Ct. 112 (1993). "Whether there is a single conspiracy or multiple conspiracies, as well as an agreement to participate in the conspiracy, is a question of fact for the jury and we must affirm its finding of a single conspiracy 'unless the evidence, taken in the light most favorable to the government, would not allow a reasonable jury so to find.' " United States v. Harris, 39 F.3d 1262, 1267 (4th Cir.1994) (quoting United States v. Urbanik, 801 F.2d 692, 695 (4th Cir.1986)). Proof of a single conspiracy in a large scale drug operation "often can be inferred from the totality of circumstances shown by the Government." Id. Additionally, repeated transactions involving various players over time can be evidence of a single conspiracy if there is an "overlap of key actors, methods, and goals." United States v. Leavis, 853 F.2d 215, 218 (4th Cir.1988). A single conspiracy does not require a "discrete, identifiable organizational structure" and can be shown by evidence of a "mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market." United States v. Banks, 10 F.3d 1044, 1054 (4th Cir.1993), cert. denied, 114 S.Ct. 1850 (1994).
 
 
 14
 At trial, the government presented extensive evidence from twenty cooperating witnesses that detailed the nature of the large-scale conspiracy to distribute cocaine and crack involved in this case. The evidence indicated an overlap of key actors, operating over a long period of time; Max and Patrick as leaders of the conspiracy, and Crepeau and DiFazio as primary participants. See Leavis, 853 F.2d at 218; see also Banks, 10 F.3d at 1054. The record also reveals that if Max was not available to supply cocaine to his distributors, they would contact Crepeau, Patrick, or DiFazio to purchase it. Along this vein, many of Max's distributors testified that they knew DiFazio and Patrick were selling crack. The method of procuring cocaine by Max and Patrick was often identical: for a long period of time Max and Patrick made bi-weekly trips to New York to procure cocaine. The methods of distributing it were often similar. There is evidence that Max and Patrick received stolen firearms in exchange for cocaine from the same individuals. There is also an overlap of the goals of the conspiracy, as the appellants shared in the handsome profits made by the distribution of cocaine and crack. Finally, there is testimony in the record from one witness, Geneive Rivero, that she purchased crack from Max. From this evidence, a rational juror could conclude beyond a reasonable doubt that there was an agreement to undertake the possession with the intent to distribute and the distribution of cocaine and crack, and that each appellant willfully joined in that agreement.
 
 C
 
 15
 A variation to the appellants' multiple conspiracy contention is the contention of Max and Crepeau that the district court erred in calculating the amount of drugs attributable to them under the Sentencing Guidelines. See United States Sentencing Commission, Guidelines Manual, Secs. 1B1.3, 2D1.1 (Nov.1993). As this argument goes, Max and Crepeau contend that the district court erred in attributing to them, for sentencing purposes, 11,021.4 grams of crack distributed by Patrick and DiFazio because there is no evidence that they distributed crack. We believe the district court correctly attributed the crack to Max and Crepeau.
 
 
 16
 In determining the offense level of a defendant in a conspiracy, the district court must base its calculation on "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." USSG Sec. 1B1.3(a)(1)(B). We have made clear that the district court is "to determine the quantity of narcotics reasonably foreseeable to each coconspirator within the scope of his agreement." United States v. Irvin, 2 F.3d 72, 78 (4th Cir.1993) (discussing the application of Pinkerton v. United States, 328 U.S. 640 (1946) under USSG Sec. 1B1.3), cert. denied, 114 S.Ct. 1086 (1994). The government bears the burden of proving, by a preponderance of the evidence, the amount of cocaine attributable to a particular defendant. United States v. McManus, 23 F.3d 878, 885 (4th Cir.1994). Because the district court's determination of the quantity of cocaine attributable to a defendant is factual in nature, it is reviewed for clear error. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir.1990).
 
 
 17
 The evidence presented below indicates no clear error in the district court's calculation. As discussed in Part IIA, the government presented evidence demonstrating how Max and Crepeau participated in this large scale drug conspiracy, and how they were aware, at least implicitly, that Patrick and DiFazio were selling crack. Essentially, the evidence in the record reveals that all of the appellants relied upon each other for the successful operation of the enterprise and shared the fruits of their endeavors with each other. In short, we simply cannot take issue with the district court's attribution, for sentencing purposes, of the 11,021.4 grams of crack distributed by Patrick and DiFazio.
 
 III
 
 18
 Patrick and DiFazio raise another argument which they contend should be resolved in their favor. They argue that the district court committed reversible error when it denied their motion to suppress. We have reviewed this assignment of error and find it to be without merit. Accordingly, the judgments of the district court are affirmed.
 
 AFFIRMED